

| | | |
|---|---|---|
| *William Cafaro, Esq.*<br>ADMITTED IN NY, CA, MD & TX<br>Email: *bcafaro@cafaroesq.com*<br><br>*Amit Kumar, Esq.*<br>*Managing Attorney*<br>ADMITTED IN NY & NJ<br>Email: *akumar@cafaroesq.com* | 108 West 39th Street, Suite 602<br>New York, New York 10018<br>Telephone: 212.583.7400<br>Facsimile: 212.583.7401<br>*www.cafaroesq.com* | *Louis M. Leon, Esq.*<br>*Associate*<br>ADMITTED IN NY<br>Email: *lleon@cafaroesq.com*<br><br>*Andrew S. Buzin, Esq.*<br>*Of Counsel*<br>ADMITTED IN NY, FL & DC |

August 11, 2021

**_Via ECF_**
Hon. Philip M. Halpern, U.S.D.J
United States Courthouse
Southern District of New York
300 Quarropas St.
White Plains, NY 10601-4150

      Re: Weis v. Tennant Sales And Service Company
         Case No.: 21-cv-1786 (PMH)

Your Honor:

  This is a joint request for approval[1] of the Settlement Agreement[2] in the above Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") action[3]. *See, Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). The fully executed Settlement and Release Agreement ("Agreement") appended as Exhibit "1."

**I. Background and Claims**

  According to his best recollections, Mr. Weis worked for the Defendant as a Field Technician from on or about August 2011 until on or about November 10, 2020. In that role, Mr. Weis repaired and serviced commercial floor care machines and other products sold by the Defendant. Plaintiff alleges that these duties qualified him as a "manual worker" under the NYLL and was thus required to be paid on a weekly basis. Plaintiff alleges that Defendant paid him every two weeks, making every other payment late.

  Moreover, Plaintiff alleges, from on or about February 2020 until his termination (the "OT Period"), Defendant required Mr. Weis to work from 8:00AM until 6:00PM Monday through

---

[1] Defendants only join this request for sections I, II, and III of this request for approval and take no position on Part IV of this letter which deals directly with Plaintiff's counsel's request for attorneys' fees and costs.
[2] This letter is tendered pursuant to Rule 408 of the Federal Rules of Evidence and § 4547 of the C.P.L.R., with the express understanding that no part hereof or any document submitted herewith may be utilized for any purpose if the Agreement is not approved and litigation must go forward, nor may any of the content or any related documents be used for any purpose except to enforce the Agreement.
3 The action was originally brought as a collective action pursuant to 29 USC 216(b) and a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. However, the Parties have agreed that this settlement is between the Named Plaintiff, Mr. Weis, and the Defendant Tennant Sales and Service Company.

Friday. However, Plaintiff alleges that he worked 50 hours per week during the OT period, and further alleges that Defendant only paid him for 40 hours per week. According to his best recollections, from the beginning of the statutory period until the end of March 2019, he was paid $27.85 per hour. Moreover, according to Plaintiff's best recollections, from April 2019 until the end of his employment, Plaintiff was paid $31.81 per hour. Due to this alleged underpayment and underreporting of hours, Plaintiff claims that during the OT Period he did not receive accurate wage statements which showed the number of hours he actually worked per week.

Separate and apart from his hourly wages, Mr. Weis also received small commissions for generating sales leads with Defendant's existing customers. For instance, if a machine was broken beyond repair, Mr. Weis would advise Defendant's sales team so they could try to sell a replacement item. If the Defendant's sales team was successful, Mr. Weis would receive a small commission. Plaintiff alleges that Defendant failed to pay Plaintiff his final commission payment of approximately $1,500.00.

Given these claims, Mr. Weis filed a complaint for unpaid overtime wages, unpaid commissions, failure to timely pay wages, and statutory record keeping violations under the FLSA and NYLL.

### **Defendant's Position**

Defendant disputes Plaintiff's claims in their entirety. Regarding Plaintiff's "manual worker" claim under NYLL § 191, Defendant disputes that Plaintiff, a highly-trained technician who repaired and maintained complex machinery, and who reached the rank of "Machinery Petit Officer-Third Class" (Compl. at ¶¶ 40-41), qualified as a "manual worker" as defined in NYLL § 191(4). Even assuming Plaintiff qualified as a "manual worker," Defendant would challenge whether there is a private right of action under NYLL § 191 where an employee is paid in full, but paid on a bi-weekly instead of weekly basis. In addition, Defendant disputes that Plaintiff satisfies Article III standing requirements to assert a claim alleging "late payment" under NYLL § 191, given that a technical violation of a state or federal statute, in itself, can constitute "concrete and individualized harm." *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016); *TransUnion LLC v. Ramirez*, — S. Ct. —, 2021 WL 2599472 (June 25, 2021). Finally, Defendant disputes that Plaintiff, even assuming he can bring a NYLL § 191 "late payment" claim, is entitled to liquidated damages under NYLL § 198(1-a).

Regarding Plaintiff's unpaid overtime claim, Defendant's position is that Plaintiff was paid in full, and actually overpaid in some cases, based on Defendant's time and pay records for Plaintiff coupled with GPS data from Plaintiff's company-provided vehicle. Defendant's position is that the GPS data corroborates that Defendant properly paid Plaintiff for all hours worked. Because Defendant alleges that it properly paid Plaintiff for all hours worked, Defendant's position is that Plaintiff's ancillary claim under NYLL § 195(3) that his paystubs were "inaccurate" also cannot be sustained.

### **Mediation**

Defendant produced paper discovery in this action and then the parties mediated the case with neutral mediator Raymond Nardo. After hours of negotiation the Parties were unable to resolve the action. However, after the mediation the Parties were able to reach a resolution in this action. Given this, the parties were able to assess their claims and defenses in this action.

### II.     The Settlement Reached Between the Parties

In his complaint, the Plaintiff alleged that he worked 50 hours per week during the OT Period. Prior to the mediation, the Defendant produced records indicating that Plaintiff worked approximately 45 hours per week during the OT period. Moreover, the Defendant produced documents and records concerning the timing of Plaintiff's wages. For the purposes of mediation only, the Plaintiff adopted the Defendant's records. Plaintiff did not incorporate the GPS data referred in Section I in its analysis prior to the mediation, as Defendant did not have this data available until shortly before the mediation began.

As such, according to the Plaintiff's best case scenario, where a trier of fact adopts the Defendant's records and agrees that Plaintiff was a manual worker under the NYLL (which Defendant vigorously disputes), and that Plaintiff satisfies Article III standing requirements, and is entitled to liquidated damages under NYLL § 198(1-a), Plaintiff's claims are worth, $237,536.15 which is inclusive of liquidated damages. Specifically, Plaintiff would be owed $9,781.58 in unpaid overtime wages and an equal amount in liquidated damages under the FLSA, as well as $1,500 in unpaid commissions plus an additional amount in liquidated damages under the NYLL. Finally, according to the above, Plaintiff alleges that he would be owed approximately $210,000.00 in liquidated damages under the NYLL provision concerning Defendant's alleged late payment of wages and $5,000.00 in statutory damages, assuming a private right of action for NYLL § 191 exists, Plaintiff satisfies standing requirements, and Defendant cannot sustain another defense. Therefore, with this settlement of $125,000.00, the Plaintiff is recovering **52.62%** of the likely value of his claim based on his best-case scenario.

Plaintiff believes that the $125,000.00 settlement amount is a fair compromise to resolve this case without further litigation, and without subjecting both parties to the time and expense of more extensive discovery and ongoing litigation. While Plaintiff was confident that he would be able to challenge the Defendant's defenses successfully, Mr. Weis is uncomfortable testifying in a formal setting. If his testimony had been rejected by the trier of fact, his recovery could have been significantly minimized. Moreover, if the trier of fact had decided that Mr. Weis was not a "Manual Worker" under the NYLL, or that he did not satisfy Article III standing requirements, or that he was not entitled to 100% liquidated damages under NYLL § 198(1-a), his award would have been greatly diminished. Lastly, each settling party is represented by counsel experienced in wage and hour practice.

The settlement agreement reflects a reasonable compromise of the disputed issues and any actual or potential claims in the totality of the circumstances. In addition, the parties believe that the certainty of settlement is better than the uncertain outcome of protracted litigation, and Plaintiff

prefers to receive his proceeds without the inevitable delay and significant risks that continued litigation would entail.

### III.   The Court Should Find the Proposed Settlement Fair and Reasonable

A FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (quotations omitted). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-CV-86, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (quotations omitted).

In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of the circumstances, including the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d at 335.

*Plaintiff's Range of Possible Recovery*

As stated above, the proposed settlement represents **52.62%** of the Plaintiff's claims and is certainly toward the higher end of the range of reasonableness of recovery, particularly after considering the obstacles Plaintiff faced. It will also enable Plaintiff to avoid anticipated burdens and risks in going forward. *See, Rodriguez-Hernandez v. K Bread & Co.*, No. 15-cv-6848 (KBF), 2017 U.S. Dist. LEXIS 78034, at *10 (S.D.N.Y. May 23, 2017) (approving a settlement of 26% of potential damages given "bona fide disputes" between the parties and litigation risks).

Avoidance of Anticipated Burdens and Expenses

If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the potential outcome. *Morris v. Affinity Health Plan*, 859 F. Supp. 2d 611, 620 (S.D.N.Y. 2012). In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the Plaintiff…against the relief offered by the Settlement." *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *8 (S.D.N.Y. Apr. 16, 2012). The settlement agreement avoids anticipated burdens in this action. Specifically, it avoids the time and expense of a jury trial. Moreover, as stated above, Mr. Weis is uncomfortable testifying in Court, if his testimony isn't believed, it is likely that a trier of fact would reduce his reward. In light of the totality of the circumstances, the Settlement Agreement represents a reasonable compromise of the *bona fide* disputes in this matter. The settlement eliminates risks and ensures that Plaintiff will recover most of his damages shortly after Court approval.

Litigation Risks

Importantly, Plaintiff's maximum claimed recovery would be far from inevitable had this case proceeded to trial. If the Defendants' evidence was taken as true, they would substantially reduce the Plaintiff's recovery. This makes the amount of post-trial recovery uncertain. Settlement permits the Plaintiff to avoid the risk of obtaining no recovery or substantially reduced recovery at trial. *See, Gomez v. Bogopa Madison LLC*, No. 17-CV-5006 (RA), 2017 U.S. Dist. LEXIS 211003, at *4-5 (S.D.N.Y. Dec. 21, 2017).

Whether the Settlement Agreement is the Product of Arm's-Length Bargaining

A "presumption of fairness, adequacy and reasonableness may attach to a…settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotations omitted). The Parties participated in arm's length settlement discussions to arrive at this settlement. These discussions occurred privately and with the mediator assigned to this case off of the SDNY mediation panel. After the mediation session, the Parties continued arm's length settlement discussions to arrive at this settlement. As such, because the settlement involves a clear and *bona fide* wage dispute in contested litigation, which was resolved through an arm's-length settlement process, it should be granted judicial approval.4

Possibility of Fraud or Collusion

There is no possibility that this settlement was precipitated by reason of "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's-length negotiations between counsel. The Parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 05 CIV 10240, 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y July 27, 2007). Here, the

---

4 The settlement agreement contains a limited Confidentiality and Non-Disclosure provision that provides, in relevant part, "This Agreement shall be publicly filed and available to the general public. If Plaintiff is approached by any third party, Plaintiff shall have the right to respond truthfully to any inquiry regarding the Agreement. Notwithstanding the foregoing, Plaintiff represents that he has not disclosed the amount or any other term of the Parties' agreed settlement or this Agreement to any third party to date, other than his attorneys and immediate family. Plaintiff further agrees that he will not initiate any conversations or communications concerning the terms of this Agreement with any friends, current or former co-workers, and/or the media and that he will not disclose any terms of this Agreement on any website, blog, or other electronic media." *See* Ex. 1, Section 5. The foregoing provision has been approved in this District Court by Judge Caproni in *King v. Software Guidance & Assistance, Inc. et al.*, No. 1:19-CV-02417-VEC (*see* DKT 48, p. 6). In addition, courts in the United States District Court, Southern District of New York have approved or endorsed similar limited confidentiality and non-disclosure provisions with carve-outs for truthful statements. *See, e.g., Galindo v. East Cty. Louth Inc.*, No. 16-CV-6149, 2017 U.S. Dist. LEXIS 186187, *14 (S.D.N.Y. Nov. 9, 2017) ("This non-disparagement clause is overly restrictive. Although not every non-disparagement clause in an FLSA settlement is objectionable, clauses that effectively bar plaintiffs from making any negative statements about the defendants cannot stand. Such clauses must at least include a carve-out for truthful statements about plaintiffs' experience litigating their case.") (internal citation and quotation omitted); *see also See Qiting Yang v. Matsuya Quality Japanese, Inc.*, No. 15-CV-1949, 2017 U.S. Dist. LEXIS 14823, at *4 (E.D.N.Y. Feb. 2, 2017) (permitting a limited "non-disparagement" provision because it contained a carve-out allowing plaintiff to "speak truthfully regarding the case.")

settlement was reached after the Parties were able to fully evaluate the strengths and weaknesses of the claims and defenses presented in the case. At all times, negotiations took place between experienced counsel and were at arm's-length. Moreover, the client left the Defendant's employ prior to bringing this action. Thus, there was no fraud or collusion between counsel and as such, the Settlement Agreement should be approved.

### IV. Plaintiff's Counsel is Entitled to a Reasonable Fee of One-Third of the Settlement Amount

Counsel is entitled to reasonable attorneys' fees to compensate for work in recovering the unpaid wages, liquidated damages, and statutory violations under the FLSA and NYLL. Under the retainer agreement between Plaintiff and his counsel, Plaintiff's counsel is entitled to a one third fee on the gross recovery of $125,000.00, which equates to $41,666.67 plus out of pocket costs and disbursements. These costs total $471.00 and consist of the filing fee and fee for service of process. Although the undersigned fully recognizes the Court's prerogative to evaluate the attorneys' fee arrangement in an FLSA matter, not all courts in this circuit have read the *Cheeks* decision to require this assessment. *See Gutierrez v. 352 East 86th St. Rest. Inc.*, 2016 U.S. Dist. LEXIS 23967, *3-4 n. 1 (S.D.N.Y Feb. 19, 2016) ("I do not understand the FLSA to regulate the relationship between the employee as plaintiff and his counselor to alter the freedom of contract between a client and his attorney"). The foregoing notwithstanding, the undersigned submits as follows in support of the requested fee:

Plaintiff's counsel is entitled to reasonable attorneys' fees to compensate for work in recovering alleged withheld compensation in this action. As lead counsel, I have personally expended 63.4 hours in the prosecution of this case. *See* Exhibit 2, Attorney Kumar's time records. "To determine the quality of representation, courts review, among other things, the recovery obtained, and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144, at *31 (S.D.N.Y Jan. 31, 2007) (citing *In re Global Crossing and ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004)).

I have been an associate with the Law Offices of William Cafaro since 2013 and the Managing Attorney of the firm since 2017. I earned my B.B.A. with dual concentrations in Finance and Computer Information Systems, *cum laude*, from George Washington University in 2005 and a J.D from Hofstra University School of Law in 2012. While in law school, I worked as a law clerk for several employment law firms, including Schwartz & Perry, LLP[5] and Outten & Golden LLP. Also, while in law school, I was a judicial intern for United States Magistrate Judge Ronald L. Ellis (ret.) of the Southern District of New York. I was admitted to practice in the state courts of New York and New Jersey in 2013 and later that same year I was admitted to practice before the Southern and Eastern Districts of New York. I was further admitted to the Federal District Court of New Jersey in 2019. Since joining the firm, I have been responsible for actively handling and maintaining a case load which at any given time are in pre-litigation stages, arbitration, administrative agencies and in litigation in state and federal courts from their inception through trial or resolution. Further, while working at the firm, I have conducted numerous trials (both bench and before a jury) and arbitrations on behalf of employees in employment law

---

[5] Now called Schwartz Perry & Heller, LLP

disputes, including wage and hour matters. Moreover, I have been selected as a "Rising Star" by Super Lawyers in the "Employment Litigation" category for the years 2017, 2018, 2019, 2020, and 2021. I was also an officer of the South Asian Bar Association of New York in the years 2018 and 2019 and I am currently a member of the National Employment Lawyers Association – New York Chapter. Moreover, in addition to representing plaintiffs who are current or former employees retained on a contingency fee basis, this Firm also represents some clients who pay hourly rates to the firm in employment litigation matters. Of those clients, depending on each client's respective financial abilities, clients have agreed to compensate the undersigned at rates of $300.00 to $400.00 per hour.

My normal hourly rate for wage and hour actions is $300.00 per hour and the Plaintiff is requesting this rate for my work in this case. This rate is reasonable based on my experience. *See, Yu Wei Cao v. Miyama, Inc.*, 2020 U.S. Dist. LEXIS 149336, at *3-*8 (E.D.N.Y. Aug. 18, 2020) (awarding $300.00 per hour for a senior associate with 5 years' experience) At the requested rate, the total lodestar is $19,020.00. We are further requesting an additional $471.00 in reasonable out of pocket disbursements incurred by attorneys and ordinarily charged to the file. *See LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998). The out of pocket expenses are:

| Disbursements | | |
|---|---|---|
| Company | Amount | Description |
| Filing Fee | $ 400.00 | Cost for filing in Court |
| Gotham Process | $ 71.00 | Service of process |
| Total | $ 471.00 | |

The preceding out of pocket expenses are fair and reasonable and ordinarily charged to the file in wage and hour actions.

Where, like here, the lodestar is less than the contingency fee requested, after reviewing the lodestar the Court generally also applies a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved. *See, In re Platinum & Palladium Commodities Litig.*, No. 10-CV-3617, 2015 U.S. Dist. LEXIS 98691 (S.D.N.Y. July 7, 2015). Moreover, a multiplier is used to compensate Plaintiff's counsel for time that is required administering the settlement. *See, Willix v. Healthfirst, Inc.*, 2011 U.S. Dist. LEXIS 21102, at *19 (E.D.N.Y. Feb. 18, 2011). Courts have awarded multipliers up to eight (8) times the lodestar and in some cases, they have awarded multipliers that are even higher. *See, Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481-82 (S.D.N.Y. 2013) (collecting cases); *see also, Riveras v. Bilboa Rest. Corp.*, No. 17-CV-4430-LTS-BCM, 2018 U.S. Dist. LEXIS 211166, at *4 (S.D.N.Y. Dec. 14, 2018) (approving a lodestar multiplier of 6.7 over Defendants' objection). Here, the multiplier requested is approximately 2.19 which is well within the range granted by courts in this circuit.

While the multiplier represents a greater recovery than Plaintiff's counsel's lodestar, this should not result in penalizing counsel for achieving an early settlement. *See Zeltser v. Merrill Lynch & Co.*, 2014 U.S. Dist. LEXIS 135635, at *22-23 (S.D.N.Y. Sep. 23, 2014) (citing *Wal-*

*Mart Stores*, 396 F.3d at 121 ("[T]he lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits.")); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n.5 (9th Cir. 2002) (noting that "the lodestar method does not reward early settlement" and that "counsel should [not] necessarily receive a lesser fee for settling a case quickly").

Lastly, the Court should review the public policy considerations concerning the manner in which attorneys' fees are reviewed. Since a reasonable value of the case had already been obtained in a settlement, the only purpose of continuing would have been to build up attorneys' fees. This would forestall a resolution that could have been achieved earlier. While the undersigned would never continue with a case to build up fees beyond the point where a reasonable settlement is made, other attorneys who do wage and hour litigation very well might. Reducing attorneys' fees in single plaintiff FLSA cases below one third would disincentivize early resolution of these cases. As FLSA cases have become a significant portion of the federal docket, the efficient and early resolution of these cases is in the best interests of public policy.

## V.   Conclusion

For the reasons set forth above the Parties jointly request that the Court approve the settlement as reflected in the Settlement Agreement. Plaintiff's counsel further requests that the Court approve the attorney's fee award reflected in the Agreement as fair and reasonable.

Respectfully submitted,
LAW OFFICES OF WILLIAM CAFARO

By   Amit Kumar, Esq. (AK 0822)
*Attorneys for Plaintiff*
108 West 39th Street, Suite 602
New York, New York 10018
(212) 583-7400
Akumar@CafaroEsq.com

CC:

All Counsel of Record (via ECF)